**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

ALEJANDRO ARELLANO, by and through
his guardian JESSICA DELGADO

      Plaintiff,

v.

LEGENDS HOSPITALITY, LLC,
a/k/a LEGENDS HOSPITALITY MANAGEMENT LLC
a/k/a LEGENDS HOSPITALITY PARENT HOLDINGS, LLC,
a/k/a LEGENDS HOSPITALITY HOLDING COMPANY LLC,
a/k/a LEGENDS GLOBAL, LLC,
a/k/a ASM GLOBAL HOLDINGS, LLC
a/k/a ASM GLOBAL LC, LLC

      Defendant.

Case No. 26-1014
Jury Demanded

**<u>COMPLAINT</u>**

Plaintiffs, by and through undersigned counsel, alleges as follows:

**PRELIMINARY STATEMENT**

This case involves a young disabled man who was denied access to the bathroom facilities at Caesar's Superdome in New Orleans, LA. On October 5, 2024, Alejandro (Alex) Arellano attended the Taylor Swift concert at the Superdome with his mother, Jessica Delgado. Mrs. Delgado is the legal guardian for her son, who is intellectually disabled and uses a wheelchair. Because Mr. Arellano is disabled, Mrs. Delgado must accompany him to the restroom for diaper changes.

But the staff at the Superdome would not let them use *any* bathrooms. They would not let them use the women's room, because Mr. Arellano is a man. And they would not let them use the men's room, because Mrs. Delgado is a woman. Mrs. Delgado requested to speak with a manager. After waiting for 30 minutes, during which time they were missing the concert, two managers

forced Mr. Arellano to use a custodial closet for his bathroom needs.  This is a cut-and-dried violation of Title III of the Americans with Disabilities Act and the Louisiana Human Rights Act. 42 U.S.C. § 12182.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction under 42 U.S.C. § 12182 and 28 U.S.C. § 1367(a).

2.  Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391(b) because the events or omissions giving rise to the Plaintiff's claims occurred there.

## PARTIES

3.  Plaintiff, Alejandro Arellano, is a resident of Brazos County, Texas.

4.  Mr. Arellano's legal interests are being pursued through his legal guardian, Jessica Delgado, who is also a resident of Brazos County, Texas.

5.  Mrs. Delgado was as appointed Alejandro's guardian by a state-court judge in Brazos County, Texas.

6.  Plaintiff has a "disability" as defined by the Americans with Disabilities Act, 42 U.S.C. § 12102, and Louisiana state law, La. Rev. Stat. §§ 51:2232(3)(a).

7.  Plaintiff is a person "subjected to discrimination on the basis of disability" under 42 U.S.C. § 12188(a)(1), and a "person deeming himself injured" under La. Rev. Stat. § 51:2264.

8.  Defendant is LEGENDS HOSPITALITY, LLC, a company incorporated in Delaware.

9.  Defendant, through one or more of its wholly owned subsidiaries, operates Caesar's Superdome.

10. Defendant's principal place of business is 61 Broadway, Suite 2400, New York, NY 10006.

11. Defendant is the parent company of a complex web of subsidiary corporations, including LEGENDS HOSPITALITY MANAGEMENT LLC; LEGENDS HOSPITALITY PARENT HOLDINGS, LLC; ASM GLOBAL HOLDINGS, LLC, ASM GLOBAL LC, LLC, and others.

12. One or more of these subsidiaries was directly involved in the wrongdoing alleged herein.

13. Upon information and belief, the "LEGENDS" corporation acquired the "ASM Global" corporation in or around 2024.

14. Defendant operates under the trade name "Legends Global."[1]

15. Defendant does business in Louisiana through a subsidiary company incorporated in Louisiana, called ASM GLOBAL LC, LLC.

## FACTUAL ALLEGATIONS

16. Defendant is Legends Global, LLC, the manager of the Caesar's Superdome.

17. The Superdome is located at 1500 Sugar Bowl Dr. New Orleans, LA 70112.

18. Legends Global, formerly ASM Global, is a venue management group that manages convention centers, music venues, and sports venues worldwide.

19. Plaintiff is Alejandro (Alex) Arellano,

20. Mr. Arellano is 24 years old.

21. Mr. Arellano was involved in a car accident when he was 4 years old that left him mentally and physically incapacitated and unable to care for himself.

22. Mr. Arellano uses a wheelchair.

23. Mr. Arellano's mother, Jessica Delgado, was legally appointed his guardian, as Mr. Arellano does not have the capability to care for himself, manage his property, or make medical decisions.

---

[1] https://legendsglobal.com

24. As a birthday gift for her son, Mrs. Delgado bought tickets to the Taylor Swift concert, held in Caesar's Superdome on October 5, 2024.

25. Raul Arellano, Mrs. Delgado's husband, drove Mr. Arellano and Mrs. Delgado to the venue from Houston to New Orleans, a roughly 5-hour trip.

26. They arrived with enough time to find their seats before the concert began.

27. Mr. Arellano and Mrs. Delgado's seats were located in Section 254 (Loge Level), Gate F, Row 1, seats 13 and 14.

28. This section is designated as a wheelchair accessible section.

29. The opening act for the Taylor Swift concert was a performer named Gracie Abrams.

30. Prior to the start of the event, Mrs. Delgado noticed that her son's diaper needed to be changed.

31. Mrs. Delgado first attempted to access the wheelchair accessible stall in the women's restroom of Gate F (the closest restroom to their section).

32. A Superdome staff member barred their entry, insisting that Mrs. Delgado's son could not enter because he is not a woman.

33. When Mrs. Delgado pressed for a family restroom, or some other private space, the staff member said there was nothing they could do.

34. The staff member crossed their arms and said, "walk down that way," pointing in the direction of Gates G and H.

35. Mrs. Delgado and her son then proceeded to the men's restroom in Gate F, but the staff again denied them entry.

36. Mrs. Delgado and her son continued to walk along the corridor through Gate G, hoping to find a family restroom.

37. Mrs. Delgado and her son found another set of restrooms at Section H, where, once again, the staff blocked them from entering.

38. While walking through the corridor with her son, Mrs. Delgado saw two venue employees (one man and one woman) who appeared to be managers.

39. After requesting directions to a family restroom or private area, Mrs. Delgado heard one of the managers say to the other, "didn't we have training about this stuff?"

40. The male employee repeated Mrs. Delgado's request to the Section H restroom attendant who still refused them entry.

41. Mrs. Delgado noticed a curtained-off first-aid station between Gates H and A, and she requested to use that area.

42. The female employee responded, "we don't think that is going to work," because it was not an "emergency."

43. The female employee stepped away to see if she could find an alternative solution.

44. After being away for 10 minutes, while Mrs. Delgado an Mr. Arellano waited, the female manager returned saying she had a solution.

45. The manager led Mrs. Delgado and her son back to Section F.

46. The manager then brought Mr. Arellano and Mrs. Delgado to a **<u>custodial closet</u>**.

47.  This was a locked closet with electrical boxes on the walls and janitorial equipment scattered on the floor.

48.  The female employee asked if this solution was suitable.

49.  It was not, but Mrs. Delgado felt she had no other options.

50. Twenty-five minutes had elapsed since the time Mrs. Delgado and Mr. Arellano left their seats to use a restroom.

51. Mrs. Delgado was determined that her son would not miss any songs by Taylor Swift.

52. Mrs. Delgado did not want her son to sit in wet clothes, so her only option was to change him in the custodial closet, next to electrical boxes and janitorial equipment.

53. Mrs. Delgado and Mr. Arellano entered the closet.

54. The manager promised to stand guard outside the door and closed the door behind them.

55. Once Mrs. Delgado was able to change her son, she left the custodial closet and had to walk through the corridor back to their seats while holding the soiled diaper, looking for an appropriate trash receptacle.

56. Mr. Arellano and Mrs. Delgado arrived back to their seats during Gracie Abrams' second-to-last song, having missed almost the entire opening act.

57. On October 29, 2024, Mrs. Delgado emailed the Defendant to complain about the treatment, as she and her son had experienced this level of discrimination too many times and wanted to make sure this didn't happen to anyone else.

58. Mrs. Delgado received a reply on November 4, 2024 from Laurie Ducros, an "ASM New Orleans Guest Services Manager."

59. Ms. Ducros apologized for the treatment they experienced, acknowledging it was not a manager, but one of their housekeeping attendants who had turned them away, and promising to train staff in the future to better serve guests with disabilities.

> I cannot apologize enough for your experience with your son and assure you that this is not how we take care of our guests with disabilities. I had to do a little research on my end because no one should have turned you away from the restroom. While speaking to my Housekeeping Manager, she mentioned that she heard about this incident and it was one of her attendants that turned you away. I explained to her and will cover this thoroughly in an upcoming training, that disabled guests and their caretakers should be allowed access to any restroom to utilize the ADA stall. I will also ensure that all of our staff is aware of the family restroom locations so that no one has to go through what you and your son experienced.

60. Mrs. Delgado attempted to resolve this dispute by way of a demand letter before filing suit, but received no response from the Defendant.

## FIRST CLAIM – Discrimination (ADA)

61. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

62. Defendant violated Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, because it is a public accommodation that discriminated against Plaintiff on the basis of his disability.

63. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and/or treated him less favorably because of his disability.

64. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

65. Plaintiff suffered injuries as a result of Defendant's conduct.

## SECOND CLAIM – Discrimination (La. Rev. Stat. § 51:2247)

66. Plaintiff repeats and realleges all allegations of this Complaint as set forth above.

67. Defendant violated La. Rev. Stat. § 51:2247 because it "den[ied] an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, … on the grounds of … disability."

68. Defendant refused to provide a reasonable accommodation for Plaintiff's disability and/or treated him less favorably because of his disability.

69. The discriminatory actions of Defendant were intentional and taken with deliberate indifference to Plaintiff's rights.

70. Plaintiff suffered injuries as a result of Defendant's conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1. Declaring that Defendant's conduct as set forth above violates 42 U.S.C. § 12182, and La. Rev. Stat. § 51:2247.

2. Entering an injunction directing that Defendant and its officers, directors, agents, employees and successors, and all other persons in active concert or participation with Defendant, take all affirmative steps necessary to remedy the effects of the illegal, discriminatory, and tortious conduct alleged and to prevent similar occurrences in the future;

3. Awarding compensatory and/or nominal damages to Plaintiff for injuries caused by Defendant's discriminatory and tortious conduct, pursuant to 42 U.S.C. § 12188, La. Rev. Stat. § 51:2264, and any other applicable provisions.

4. Awarding punitive damages to Plaintiff for injuries caused by Defendant's discriminatory and tortious conduct, pursuant to 42 U.S.C. § 12188, La. Rev. Stat. § 51:2264, and any other applicable provisions.

5. Awarding costs and attorney's fees to Plaintiff, pursuant to 42 U.S.C. § 12188, La. Rev. Stat. § 51:2264, and any other applicable provisions;

6. Requiring that Defendant and its employees undergo remedial training regarding their obligations under state and federal laws prohibiting disability discrimination;

7. Requiring that Defendant put into place policies and training to prevent similar violations from occurring in the future;

8. Granting such further relief as this Court may deem just and proper.

## JURY DEMAND

Consistent with Federal Rule of Civil Procedure 38(b), Plaintiff hereby requests a trial by jury as to every claim for which he is entitled.

Respectfully submitted,

May 12, 2026

  /s/ *Chris Edmunds*

Chris Edmunds, Counsel for Plaintiff
LBSA: 37670
Chris Edmunds Law Office
740 Dante St.
New Orleans, LA 70118
(504) 314-0034
chrisedmundslaw@gmail.com